

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-19-00884-CV

**IN THE INTEREST OF L.D.L.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA02856
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: April 15, 2020

AFFIRMED

Appellant Marco appeals the trial court's order terminating his parental rights to his child, L.D.L. In a single issue, Marco challenges the sufficiency of the evidence supporting the trial court's best interest finding. We affirm the trial court's termination order.

**Background**

In November 2018, the Texas Department of Family and Protective Services ("the Department") removed L.D.L. based on its concerns that Marco and L.D.L.'s mother Cassie were abusing drugs and had a violent relationship. The Department also had concerns regarding Cassie's mental health. Prior to trial, Cassie executed an affidavit relinquishing her parental rights to L.D.L. At trial, Cassie reiterated her intent to relinquish her parental rights and testified she believes it is in L.D.L.'s best interest to be adopted by her paternal aunt and uncle.

The trial court held trial in November 2019, shortly after L.D.L. turned two years old. Since her removal, L.D.L. had been placed with her paternal aunt and uncle, who planned to adopt her. L.D.L.'s aunt testified L.D.L. is "doing exceptionally well," "thriving," "growing," and "has grown to be a part of [her aunt's] family." L.D.L.'s aunt stated she does not believe her brother Marco can properly care for L.D.L. at this time because she does not "think he understands the responsibility to take care of a child, a toddler," or that he "could do it financially." L.D.L.'s aunt testified "[Marco has] been a [drug] user for 15, 20 years and he'll stay clean for a while but he reverts back to using." L.D.L.'s aunt does not believe Marco adequately addressed his drug use or issues with domestic violence during the pendency of this case.

The Department first removed L.D.L. from her parents in 2017. Nine months later, in February 2018, the Department returned L.D.L. to Cassie but did not reunite L.D.L. with Marco because Marco did not complete his family service plan and because the Department had unresolved concerns regarding Marco's drug use. L.D.L. was returned to Cassie on the condition that Marco was not permitted to visit with L.D.L. unless he tested clean for drugs and agreed to supervised visitation. When the Department learned Cassie was allowing Marco unsupervised visitation, the Department removed L.D.L. in November 2018 and held a "family team meeting" in December 2018. Cassie arrived at the meeting with a black eye she claimed Marco had given her and admitted to having recently used methamphetamine. Although Marco did not admit using drugs, Marco's behavior during the meeting suggested he was using methamphetamine. The Department caseworker testified Marco was "very fidgety," "paranoid," and "kind of all over the place," and he "kept on fighting with [Cassie]" despite repeated warnings that he would be asked to leave the meeting. His behavior was "very erratic during the meeting so there was a concern that he was under the influence during that time."

After L.D.L.'s second removal, Marco signed a family service plan that required him to complete a drug assessment, drug treatment, domestic violence and parenting classes, a psychosocial evaluation, and individual counseling. Marco belatedly engaged in services and did not complete drug treatment or domestic violence classes. Marco entered an outpatient drug treatment program but was discharged from the program after testing positive for alcohol in August 2019 and methamphetamine in September 2019. The outpatient program manager at the drug treatment facility testified Marco had been "consistent with attendance and was doing well over all in his sessions" but did not graduate because a urinalysis test taken on September 24, 2019 came back positive for "meth." Marco was offered inpatient treatment following the second positive test, but he refused. Marco also applied to enroll in domestic violence classes but was unable to enroll before trial because he was late to his intake appointment and put on a thirty-day reenrollment waiting list.

Marco has an extensive criminal history, including multiple arrests for family violence and assault. In August 2019, Marco was arrested for driving while intoxicated and charged with additional offenses for which he was awaiting trial at the time this case was tried. Also while this case was pending, Marco was arrested for, but not charged with, assaulting Cassie. The San Antonio police detective who responded to the assault allegation testified Cassie told him Marco struck her face with an open hand. The detective observed redness on both sides of Cassie's face and behind her ears. Cassie told the Department caseworker that while this case was pending, Marco hit her causing a black eye on one occasion and struck her twice in the face on another. Marco denied Cassie's allegations and "was adamant that it did not happen and that it was just a verbal altercation." Marco did admit, however, to taking Cassie's glasses off a table and breaking them during an argument. At trial, Cassie testified Marco has hit her approximately five times since this case began.

The Department caseworker testified Marco initially delayed in visiting L.D.L. but began consistently visiting her in March or April 2019. The visits are appropriate, and Marco appears bonded with L.D.L. The caseworker believes L.D.L.'s wellbeing would be in danger if she is placed with Marco because "he is still living that lifestyle[,] [h]aving the company around with drug users" and because she does not "know if he knows what it's really like to care for a two-year-old." Although Marco testified he had been employed for two months prior to trial, the Department caseworker testified she has "never been able to see an actual check stub" or verify Marco's employment. The caseworker does not believe Marco has addressed his problem with aggression or learned coping mechanisms for his anger.

Marco testified he delayed in starting services because he was moving from San Antonio to La Vernia at the beginning of this case and because he believed the responsibility to work services belonged only to Cassie. Marco, however, admitted he "messed up" and "should have taken initiative" sooner regarding working services. Marco testified there was no domestic violence in his relationship with Cassie and claimed he last used drugs in February 2019. Two days after he tested positive for methamphetamine in September 2019, Marco voluntarily went to the drug testing company and paid for another test, which was negative. The president of the drug testing company verified Marco's re-test was negative and explained that because the prior test result stated it had leaked in transit, he considered it "fatal[ly] flaw[ed]" and invalid. Marco most recently tested negative for drugs two weeks before trial. Marco agreed L.D.L. "has been taken care of" by Marco's sister and her husband, but he did not agree it is in L.D.L.'s best interest to remain with her aunt and uncle permanently.

Marco's licensed professional counselor testified Marco began attending weekly counseling sessions in April 2019. Through counseling, Marco is addressing relationship boundaries, anger management, and domestic violence. The counselor testified Marco "excelled

in everything" and is "doing really well" at applying coping strategies in his life. The counselor believes Marco loves L.D.L. very much and reunifying Marco with L.D.L. "is fine" because Marco "is working and doing what he needs to do in counseling." On cross-examination, however, the counselor admitted she does not know what is in L.D.L.'s best interest and her reunification recommendation is "uninformed."

Marco also has an eleven-year-old son who was the subject of another Department case. The Department caseworker assigned to the other case testified Marco is working his services in that case and is currently an appropriate caregiver for his son. Marco's son was placed in his custody on September 30, 2019, and the caseworker believes Marco's home is appropriate for both his son and another child to live in. The caseworker was not aware, however, that Marco failed a drug test six days before his son was placed in his care. The caseworker testified she would not have placed Marco's son with Marco had she been aware of that positive drug test, and she will require Marco to submit to another drug assessment as part of his family service plan in the other case.

At the conclusion of the November 2019 trial, the trial court granted the Department's petition for termination and terminated Marco's and Cassie's parental rights. Marco, but not Cassie, appeals the trial court's termination order.

## Standard of Review

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review the legal and factual sufficiency of the evidence using well-established standards of review. TEX. FAM. CODE ANN. §§ 101.007,

161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (legal sufficiency).

## Discussion

In a single issue on appeal, Marco argues the evidence is legally and factually insufficient to support the trial court's determination that termination is in L.D.L.'s best interest.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)). In determining the best interest of a child, we apply the factors set forth in section 263.307 of the Family Code, as well as the non-exhaustive *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d at 371–72. The trial court need not find evidence of each *Holley* factor in order to conclude termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In addition, evidence that a parent has committed one of the acts or omissions listed in subsection 161.001(b)(1) also may be probative of the best interest of the child. *Id.* at 28.

Although L.D.L. is too young to express her desires, the evidence reflects she is loved and thriving in the care of her aunt and uncle, who plan to adopt her. Marco admitted L.D.L. has been cared for while placed with her aunt and uncle, and both Cassie and the Department caseworker

testified they believe remaining with her aunt and uncle is in L.D.L.'s best interest. The Department caseworker also testified Marco and his sister love each other, and the Department trusts L.D.L.'s aunt to determine if, when, and how to permit Marco to be a part of L.D.L.'s life.

Marco delayed in beginning to work his family service plan and in attending visits with L.D.L. Although Marco eventually engaged in services and had appropriate visits with L.D.L., with whom he is bonded, Marco failed to successfully complete his family service plan prior to trial. Marco tested positive for methamphetamine while in drug treatment and admitted to using drugs as recently as February 2019. Even if Marco's September 2019 positive drug test was invalid, Marco also tested positive for alcohol and was arrested for driving while intoxicated in August 2019.

As the factfinder, the trial court had discretion to disregard Marco's testimony that there was no domestic violence in his relationship with Cassie. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (holding courts of appeals must defer to the factfinder's reasonable credibility determinations). Cassie testified Marco physically assaulted her approximately five times during the pendency of this case, and the Department caseworker and a San Antonio police detective confirmed Cassie reported domestic violence during this case. The caseworker observed Cassie with a black eye, and the detective observed red marks on Cassie's face and ears. In light of the evidence demonstrating Marco's ongoing pattern of substance abuse and domestic violence, the record supports the conclusion that Marco poses a threat to L.D.L.'s physical and emotional safety.

After considering all of the trial evidence in light of the statutory and *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding. Marco's sole issue is overruled.

**Conclusion**

Having overruled Marco's sole issue on appeal, we affirm the trial court's order of termination.

Sandee Bryan Marion, Chief Justice